IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 05-cv-01751-LTB-BNB

JOHNNY L. REYNOLDS,

Applicant,

v.

WARDEN GARY WATKINS,
DEPARTMENT OF CORRECTIONS (CDOC); and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

Respondents.

_____

## ORDER AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

_____

This matter is before me on the **Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254** (the "Application"), filed by Johnny Reynolds (the "petitioner") on September 8, 2005.  The respondents filed an Answer to Application for Writ of Habeas Corpus (the "Answer") on December 14, 2005.  For the following reasons, I respectfully RECOMMEND that the Application be DENIED.

## I.  THE LAW

This Court may review the petitioner's application for writ of habeas corpus "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).  An application cannot be granted unless it appears that the petitioner has exhausted available state remedies.  28 U.S.C. § 2254(b)(1).

If a petitioner exhausts his available state remedies, his application may be granted only if the adjudication of the claim (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d). Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).

Generally, if a petitioner fails to exhaust available state remedies, a federal court should dismiss the application without prejudice so that the state remedies may be pursued.  Demarest v. Price, 130 F.3d 922, 939 (10th Cir. 1997).  The federal court, however, should first consider whether the petitioner would be able to raise the unexhausted claims in the state court.  Id.

If the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, the petitioner's claims are procedurally defaulted for purposes of federal habeas corpus relief. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991).  The federal court may not consider issues raised in a habeas corpus petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can show cause for the default and actual prejudice as a result of the alleged violation of federal law or can demonstrate that the failure to consider the claims will result in a fundamental miscarriage of justice.  Coleman, 501 U.S. 722, 750 (1991).  The determination of cause, prejudice, and fundamental miscarriage of justice are matters of federal law.  Demarest, 130 F.3d at 941.

## II.  BACKGROUND

The background facts of this case are described by the Colorado Court of Appeals as

follows:

>   Defendant, Johnny Reynolds, appeals the judgment of conviction
>   and sentence entered on a jury verdict finding him guilty of felony
>   murder, § 18-3-102(1)(b), C.R.S. 2003; second degree murder, §
>   18-3-103(1), C.R.S. 2003; and second degree kidnaping with a
>   deadly weapon, § 18-3-302(1), C.R.S. 2003.  We affirm the
>   conviction and sentence, but remand for correction of the mittimus.
>
>   Defendant challenges the trial court's denial of his motion to
>   dismiss based on destruction of evidence and his motion to suppress
>   statements made to police; the court's responses to juror questions
>   during deliberations; and the merging of the second degree
>   kidnapping and second degree murder convictions into the felony
>   murder conviction.
>
>   The victim's body was discovered in Arapahoe County.  She had
>   lacerations to her jugular vein and had been run over and dragged
>   by a vehicle.  Later that day, police discovered an abandoned
>   vehicle with the victim's blood on it near defendant's Denver
>   residence.
>
>   On the same day, defendant arrived at his home with blood on his
>   hands, clothes, and feet.  Defendant told his wife to call the police
>   because he had done something wrong.  Two of the police officers
>   who were in the area examining the abandoned car went to
>   defendant's home.  Defendant's wife invited them into the home,
>   and one officer questioned him in his kitchen, without advising
>   defendant of his <u>Miranda</u> rights.
>
>   While the officers were there, they discovered that defendant had
>   overdosed on antidepressants and called an ambulance.  Defendant
>   was taken to the hospital unaccompanied by the officers and
>   without handcuffs.
>
>   The abandoned vehicle was towed to the Denver police garage
>   where both the inside and outside were photographed extensively,
>   and blood samples were taken from both the inside and outside.
>   The vehicle was eventually towed to a storage facility and kept
>   outdoors, with the doors sealed and locked.  Defense counsel was

notified of the vehicle's location on December 7, 2000.  They did not attempt to examine it until April 27, 2001.  During the trial, defendant admitted that he had driven this vehicle on the day of the crime.

On May 17, 2001, after some of the initial blood samples had become untestable due to mold, the prosecution collected additional blood samples from the vehicle.  The prosecution also then removed portions of the vehicle's seat covers.

*Answer*, Appendix D, pp. 1-2.

The Colorado Court of Appeals affirmed the petitioner's conviction and sentence.  Id. at p. 14.  The petitioner filed a Petition for Writ of Certiorari, which was denied on October 12, 2004.  Id. at Appendix F.

The petitioner filed his Application on September 8, 2005.  The respondents concede that the Application is timely.  The Application asserts the following claims:

(1)  the prosecution denied the petitioner's right to a fair trial by destroying exculpatory evidence;

(2)  the petitioner's statements to the police should have been suppressed because he was not advised of his Miranda rights before the police interrogated him in his home and because he was extremely intoxicated during the interview; and

(3)  the trial court denied the petitioner's right to a fair trial by an impartial jury through its improper answers to the jury's questions asked during deliberations.

### III.  ANALYSIS

#### A.  Request for Counsel

The petitioner requests appointment of counsel to assist him in this matter.  *Application*, p. 9.  "In most federal courts, it is the practice to appoint counsel in post-conviction proceedings only after a petition for post-conviction relief passes initial judicial evaluation and the court has

determined that issues are presented calling for an evidentiary hearing." <u>Johnson v. Avery</u>, 393

U.S. 483, 487 (1969) (emphasis added).

An evidentiary hearing is necessary only under the following circumstances:

> If the applicant has failed to develop the factual basis of a claim in State court proceedings, the court shall not hold an evidentiary hearing on the claim unless the applicant shows that--
>
> > (A)   the claim relies on--
> >
> > > (I)   a new rule of constitutional law, made retroactive to cases on collateral review by the Supreme Court, that was previously unavailable;  or
> > >
> > > (ii)   a factual predicate that could not have been previously discovered through the exercise of due diligence;  and
> >
> > (B)   the facts underlying the claim would be sufficient to establish by clear and convincing evidence that but for constitutional error, no reasonable factfinder would have found the applicant guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

Upon review of the Application, I find that the petitioner has failed to establish any of the

requisites for an evidentiary hearing.  Accordingly, the petitioner's motion for appointment of

counsel is denied.

## B.   Claim One

Claim One alleges that the petitioner was denied his right to a fair trial because the

prosecution destroyed exculpatory evidence.  The respondents concede that the petitioner

exhausted this claim in the state courts.  Therefore, the Application can be granted only if the

adjudication of the claim (1) resulted in a decision that was contrary to, or involved an

unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. 28 U.S.C. § 2254(d).

The federal law on this issue is well-established. The Due Process Clause requires police departments to preserve clearly exculpatory evidence in their possession that might not be available to a defendant through other means. California v. Trombetta, 467 U.S. 479, 489 (1984). Where the evidence is potentially useful rather than clearly exculpatory, a defendant must show that bad faith on the part of the police in order to establish a due process violation. Youngblood, 488 U.S. at 58. The Tenth Circuit summarizes this distinction as follows:

> Under the two-prong *Trombetta* test, the government violates a defendant's right to due process when: (1) it destroys evidence whose exculpatory significance is apparent before destruction; and (2) the defendant remains unable to obtain comparable evidence by other reasonably available means. The Court in *Youngblood* extended *Trombetta* to provide that, if the exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was potentially useful for the defense, then a defendant must show that the government acted in bad faith in destroying the evidence.

United States v. Bohl, 25 F.3d 904, 909-10 (10th Cir. 1994) (internal quotations and citations omitted) (citing Trombetta, 467 U.S. 479; Arizona v. Youngblood, 488 U.S. 51). "The court in Youngblood defined 'potentially useful evidence' as evidence of which 'no more can be said than that it could have been subjected to tests, the results of which *might* have exonerated the defendant.'" Id. at 910 (quoting Youngblood, 488 U.S. at 57) (emphasis added in Bohl).

The appellate court upheld the trial court's denial of this claim as follows:

> In order to establish a due process violation for destruction of evidence, the defendant must establish that (1) the evidence was destroyed by state action; (2) either the evidence possessed an exculpatory value that was apparent before it was destroyed or the police acted in bad faith; and (3) the defendant was unable to obtain comparable evidence by other reasonably available means.

6

Here, defendant argues some of the swabs used to take blood samples from the vehicle, which he characterizes as the murder weapon, were not properly dried before sealing, causing the samples to become moldy and untestable; the vehicle, which had blood at several locations on its exterior, was stored outdoors, exposed to the elements; removal of seat covers by police for testing precluded defendant from fully viewing the interior of the vehicle and inspecting the blood spatter pattern; and improper storage of the seat covers after their removal blurred the blood spatter pattern.

We conclude defendant has not met his burden of proof that, even if some evidence was destroyed by state action, he was unable to obtain comparable evidence by other reasonable means.

The record is undisputed that, while some of the initial blood samples became untestable due to mold, the prosecution was able to return to the vehicle and obtain testable samples from the same locations.  Further, the trial court found, with record support:

> [T]he vehicle remains available for viewing and testing.  The seat covers remain available for viewing and testing.  Blood samples remain available for viewing and testing. . . .  The victim's pants remain available for viewing and testing.  <u>No attempt to obtain samples of these items after the vehicle was stored outside has been made [by the defense]</u>.

(Emphasis added.)

Moreover, defendant does not assert that the police acted in bad faith.

Accordingly, we discern no abuse of discretion in denying defendant's motion to dismiss.

*Answer*, Appendix D, pp. 7-9.

I find that the appellate court's resolution of this claim was not contrary to established federal law, nor did it result in an unreasonable determination of the facts presented in the state court proceeding. Factual determinations made by the state court are presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. § 2254(e)(1). The petitioner does not provide any clear and convincing evidence to rebut the factual determinations made by the state court. Therefore, I find no basis upon which to grant the petitioner's Application with regard to this claim. 28 U.S.C. § 2254(d).

### C.   Claim Two

Claim Two asserts that the petitioner's statements to the police should have been suppressed because he was not advised of his Miranda rights before the police interrogated him in his home and because he was extremely intoxicated during the interview. The respondents concede that Claim Two is exhausted.

### 1.   **Miranda** Advisement

In Miranda, the United States Supreme Court held:

> [T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.

Miranda v. Arizona, 384 U.S. 436, 444 (1966).

When determining whether a defendant is in custody for purposes of Miranda, the court must consider all of the relevant facts. However, the ultimate inquiry is whether a reasonable person in that position would believe that his "freedom of action had been curtailed to a 'degree associated with formal arrest.' " United States v. Griffin, 7 F.3d 1512, 1518 (10th Cir.1993)

8

(quoting <u>California v. Beheler</u>, 463 U.S. 1121, 1125 (1983) and <u>Berkemer v. McCarty</u>, 468 U.S. 420, 440 (1984)).

The appellate court addressed the petitioner's <u>Miranda</u> claim as follows:

> We first conclude defendant's statements were not made during a custodial interrogation.
>
> <u>Miranda</u> applies only when a person is in custody and his statement is the product of a police interrogation.
>
> <u>Miranda</u> is not intended to interfere with the traditional function of police officers to investigate a crime. Therefore, on-the-scene questioning that enables the police to determine what has happened and who has been injured is not an interrogation under <u>Miranda</u>.
>
> Whether a person is in custody presents a mixed question of law and fact that we review de novo while deferring to a trial court's findings of historical facts and credibility.
>
> In determining whether a person is in custody, the test is an objective one: whether a reasonable person in the suspect's position would believe himself or herself deprived of freedom of action to the degree associated with a formal arrest.
>
> A court must consider the totality of the circumstances to determine whether a person is in custody. This consideration may include a number of factors, including the time, place, and purpose of the encounter; the persons present; the words spoken; the officer's tone of voice and general demeanor; the length and mood of the interrogation; any limitation of movement or other form of restraint placed on the suspect; responses to questions asked by the suspect; directions given to the suspect; and the suspect's responses.
>
> Here, the first contested statement, defendant's telling his wife, "to call the police because he had done something wrong," was outside the presence of police officers. Thus, it was not the result of an interrogation or any other police conduct. The other contested statements occurred inside defendant's home during questioning by an officer.

9

When the officers arrived at defendant's home, they found him sitting at the kitchen table, with both wet and dry blood stains on his clothing and body. One officer asked defendant what had happened, and he answered, "I think I killed somebody." The officer restated this answer, and defendant said, "well, I hurt somebody." The officer asked defendant where it happened, and he said, "east, way east." The officer asked if there was a victim anywhere, and defendant stated, "I think I ran one over with my car and killed them [sic]." The officer restated this answer, and defendant said, "I think I cut her in the park." Defendant then dozed off.

Here, the trial court found, with record support, the following facts: three police officers were sent to defendant's home based on a phone call from defendant's wife, who invited them to come inside; defendant was sitting at the kitchen table; the officer questioning defendant did not know whether he was a victim or a perpetrator; during the questioning the officer used a conversational tone and never raised his voice; all of defendant's answers were responsive and intelligible; the police officers had their weapons holstered at all times; and defendant was never restrained or handcuffed. The court also stated, "there was an attempt to discover where the blood came from and there was an attempt to discover if the defendant needed medication or medical assistance." Defendant was not told whether he was free to leave, and defendant never attempted to leave.

We conclude that the questioning by the officer constituted an on-the-scene investigation. However, even if the questioning were considered an interrogation, based on the totality of the circumstances, we also conclude that defendant was not in custody for <u>Miranda</u> purposes.

*Answer*, Appendix D, pp. 3-5 (internal quotations and citations omitted).

I find that the appellate court's adjudication of this claim is consistent with clearly established federal law and its decision was based on a reasonable determination of the facts presented. I find no basis upon which to grant the petitioner's Application with respect to this claim. <u>See</u> 28 U.S.C. 2254(d).

10

## 2.   Voluntariness

The petitioner claims that his statements to the police officers were not intelligently or voluntarily made because he was "in shock and intoxicated" due to his ingestion of sleeping pills. To be admissible under the Due Process Clause of the Fourteenth Amendment, a defendant's statements to police must have been "made freely, voluntarily and without compulsion or inducement of any sort." Nickel v. Hannigan, 97 F.3d 403, 410 (10th Cir. 1996) (citing Haynes v. Washington, 373 U.S. 503, 513 (1963)). "[T]o conclude that a confession is involuntary under the Due Process Clause of the Fourteenth Amendment, [the court] must find that it was the result of 'coercive police activity.'" Id. (quoting Colorado v. Connelly, 479 U.S. 157, 167 (1986)). A "defendant's mental condition, by itself and apart from its relation to official coercion" is not dispositive of the voluntariness issue. Colorado v. Connelly, 479 U.S. at 164. Voluntariness is determined in view of the totality of the circumstances. Nickel v. Hannigan, 97 F.3d at 410 (citing Haynes, 373 U.S. at 513)).

The state appellate court concluded that the petitioner's statements were voluntary:

> A statement obtained from a defendant is admissible only if made voluntarily. To determine whether a statement is voluntary, the trial court must evaluate the totality of the circumstances, demonstrating that the statement was the product of free and rational choice. A reviewing court is bound by the trial court's finding of fact on voluntariness.

> Although the mental condition of the defendant is a relevant factor, coercive police activity remains a necessary predicate to the finding that a statement is not voluntary. Thus, the ultimate question remains whether the police compelled the defendant to make a statement.

> Here, defendant argues that because he had overdosed on antidepressants, his mental state or incapacity rendered him unable to understand his situations, and therefore his statements were involuntary.

11

> The trial court found that defendant's statements were voluntary. The court explained that while defendant appeared sleepy and his answers were sometimes vague and slow, his answers also seemed logical, intelligible, and responsive to questions that were asked: "the responses of defendant were cogent, intelligent, and track actually the occurrences in this case." The record supports this explanation.
>
> Further, and also with record support, the court found that the officers did not engage in coercive conduct. For example, defendant was never physically restrained or threatened and the officer never raised his voice.
>
> Thus, we conclude the trial court properly ruled that defendant's statements were voluntary.

*Answer*, Appendix D, pp. 6-7 (citations omitted).

The appellate court's adjudication of this claim was in accordance with clearly established federal law, and its decision was based on a reasonable determination of the facts presented. I therefore find no basis upon which to grant the Application with respect to this claim. See 28 U.S.C. 2254(d).

### D.  Claim Three

Claim Three alleges that the trial court denied the petitioner's right to a fair trial by an impartial jury through its improper answers to the jury's questions asked during deliberations. In his opening brief to the state appellate court, the petitioner framed this claim as follows:

> During deliberations, the jury requested guidance with respect to the elemental instructions on felony murder and second degree kidnapping. It also requested guidance on the law contained in the second degree kidnapping and reasonable doubt instructions. After conferring with counsel, the trial court provided erroneous answers to the jury, over defense counsel's objections.

*Answer*, Appendix A, p. 26.

The respondents assert that, as to the felony murder and second degree kidnapping juror question ("the first jury question"), the petitioner did not present the issue to the state court as a violation of the Constitution or laws or treaties of the United States. *Application*, pp. 31-32. Therefore, the respondents argue, this portion of Claim Three is not exhausted. Id.  The respondents concede that the claim regarding the second degree kidnapping and reasonable doubt juror question ("the second jury question") is exhausted.

The petitioner's brief to the state appellate court provides a separate section on each of the two jury questions. *Answer*, Appendix A, pp. 26-31.  Section A addresses the first jury question. Id. at p. 26.  Section B addresses the second jury question. Id. at p. 29.  Section A and B are each broken down into three subsections: (1) The Instructions Provided to the Jury; (2) The Conference on the Jury's Questions; and (3) Argument. Id. at pp. 26-31.

In Section B the petitioner argues that the trial court violated his due process rights because it should have referred the jury to the instructions as a whole. Id. at p. 30.

Section A, by contrast, does not address due process.  Instead, the petitioner argues that the trial court's resolution of the first jury question constituted reversible error under state law. Id. at p. 28.  The petitioner did not attempt to apply the facts of the claim to any federal or constitutional standard.  Importantly, the Colorado Court of Appeals did not analyze this claim under any constitutional or federal standard; instead, the analysis was limited to whether the trial court committed reversible error under state law. Id. at Appendix D, pp. 9-11.

Comity is the rationale underlying the exhaustion requirement--state courts must be provided with the first opportunity to pass on alleged defects in their criminal proceedings leading to the conviction at issue. Rose v. Lundy, 455 U.S. 509, 518 (1982).  In order to "encourage state prisoners to seek full relief first from the state courts," the exhaustion requirement must be

13

"rigorously enforced."  Id.  Exhaustion of state remedies requires that a petitioner raise in the state courts both the factual and legal bases of his habeas claims.  Gibson v. Scheidemantel, 805 F.2d 135, 138 (3rd Cir. 1986).  Consequently,

> It is not enough that the petitioner presents to the state court the facts upon which a federal claim is based.  The claim must be substantially equivalent to that litigated in the state court.  Both the legal theory and the facts supporting a federal claim must have been submitted to the state court.

O'Halloran v. Ryan, 835 F.2d 506, 508 (3rd Cir. 1987) (quotations and citations omitted).

I find that the petitioner's allegations and supporting evidence did not offer the Colorado Court of Appeals a "fair opportunity to apply controlling legal principles to the facts bearing upon his constitutional claim" regarding the first jury question.  See Thomas v. Gibson, No. 99-5030, 2000 WL 986587 at *13 (10th Cir. July 18, 2000).  Because the substance of the petitioner's federal habeas corpus claim regarding the first jury question was not fairly presented to the state court, see Picard, 404 U.S. at 278, this claim has not been exhausted.

When a petitioner fails to exhaust available state remedies, the federal court must determine whether the petitioner would be able to raise the claim in the state court.  Demarest, 130 F.3d at 939.  If the claim would be procedurally barred in the state court, the claim is procedurally defaulted for purposes of habeas relief.  Coleman, 501 U.S. at 735 n.1.

This claim is procedurally barred from state court consideration because the determination of an issue on direct appeal precludes review of that same issue on a motion for post-conviction relief.  Colo. R. Crim. P. 35(c); DePineda v. Price, 915 P.2d 1278, 1281 (Colo. 1996).  Because the petitioner presented this issue on direct appeal (as a reversible error claim), he is prohibited from asserting it again (as a due process claim).

I may not consider issues raised in a habeas petition that have been defaulted in state court on an independent and adequate procedural ground unless the petitioner can either (1) show cause for the default and actual prejudice as a result of the alleged violation of federal law, or (2) demonstrate that a failure of this court to consider the claims will result in a fundamental miscarriage of justice. English v. Cody, 146 F.3d 1257, 1259 (10th Cir.1998) (citing Coleman, 501 U.S. at 749-50); Steele v. Young, 11 F.3d 1518, 1521 (10th Cir.1993).

The petitioner has not argued cause and prejudice or fundamental miscarriage of justice. Because the claim is procedurally defaulted, and because the petitioner did not demonstrate cause and prejudice or a fundamental miscarriage of justice, this claim is not proper for consideration on an application for writ of habeas corpus.

As to the second jury question, the petitioner argues that the trial court violated his due process rights because it should have referred the jury to the instructions as a whole. The federal law on this issue is well established:

> A § 2254 petitioner has a heavy burden in attempting to set aside a state conviction based on an erroneous jury instruction. Maes v. Thomas, 46 F.3d 979, 984 (10th Cir.1995). As a general rule, errors in jury instructions in a state criminal trial are not reviewable in federal habeas corpus proceedings, "unless they are so fundamentally unfair as to deprive petitioner of a fair trial and to due process of law." Long v. Smith, 663 F.2d 18, 23 (6th Cir.1981) (citing Henderson v. Kibbe, 431 U.S. 145, 154, 97 S.Ct. 1730, 1736-37, 52 L.Ed.2d 203 (1977)). In Henderson, the Supreme Court stressed "[t]he question in such a collateral proceeding is 'whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process.'" 431 U.S. at 154, 97 S.Ct. at 1737 (quoting Cupp v. Naughten, 414 U.S. 141, 147, 94 S.Ct. 396, 400-01, 38 L.Ed.2d 368 (1973)).

>> "The burden of demonstrating that an erroneous instruction was so prejudicial that it will support a

> collateral attack on the constitutional validity of a
> state court's judgment is even greater than the
> showing required to establish plain error on direct
> appeal." The question ... is not whether the
> [challenged] instruction is "undesirable, erroneous,
> or even 'universally condemned,' " but whether the
> instruction so infected the trial that the resulting
> conviction violates due process.

> Maes, 46 F.3d at 984 (quoting Henderson, 431 U.S. at 154, 97
> S.Ct. at 1736-37) (citations omitted).

Nguyen v. Reynolds, 131 F.3d 1340, 1357 (10th Cir. 1997).

In denying this claim, the state appellate court stated:

> We also reject defendant's contention that the court's answer to the
> second jury question was misleading because it did not refer to the
> instructions as a whole. To the contrary, the trial court directed the
> jury to look at the instructions as a whole, and it also specifically
> referred to the instructions on complicity and reasonable doubt.
> This answer adequately informed the jurors by directing their
> attention to the original instructions.

*Answer*, Appendix D, p. 9-12 (citation omitted).

The appellate court's finding that the jury was directed to look at the instructions as a

whole is presumed correct unless rebutted by clear and convincing evidence. 28 U.S.C. §

2254(e)(1). The petitioner does not attempt to rebut any factual determinations made by the state

court. Consequently, the state court's adjudication of this claim did not result in a decision that

was contrary to, or involved an unreasonable application of, clearly established federal law, nor

did it result in an unreasonable determination of the facts presented at trial. I find no basis upon

which to grant the petitioner's Application with respect to this claim. See 28 U.S.C. § 2254(d).

16

## IV.   CONCLUSION

IT IS ORDERED that the petitioner's request for appointment of counsel is DENIED.

FURTHER, I respectfully RECOMMENDED that the Application be DENIED.

FURTHER, IT IS ORDERED that pursuant to 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), the parties have 10 days after service of this recommendation to serve and file specific, written objections.  A party's failure to serve and file specific, written objections waives *de novo* review of the recommendation by the district judge, Fed. R. Civ. P. 72(b); Thomas v. Arn, 474 U.S. 140, 147-48 (1985), and also waives appellate review of both factual and legal questions.  In re Key Energy Resources Inc., 230 F.3d 1197, 1199-1200 (10th Cir. 2000).  A party's objections to this recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review.  United States v. One Parcel of Real Property, 73 F.3d 1057, 1060 (10th Cir. 1996).

Dated March 30, 2006.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge